UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE HINDLEY, fdba SONOMA PROSTHETIC EYES,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No. 15-cv-01973-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

## INTRODUCTION

Plaintiff Julie Hindley, fdba Sonoma Prosthetic Eyes ("Plaintiff") brings this Complaint related to the decision to revoke her participation in the Medicare program as a durable medical equipment supplier. Sec. Am. Compl. ("SAC") ¶ 1, Dkt. No. 18. Pending before the Court is Defendants Sylvia Mathews Burwell, in her capacity as Secretary of the United States Department of Health and Human Services ("the Secretary"), the Center for Medicare and Medicaid Services ("CMS"), Celerian Group, National Supplier Clearinghouse ("NSC"), and Palmetto GBA's (collectively, "Defendants") Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and failure to state a claim upon which relief can be granted under Rule 12(b)(6). The Court finds this matter suitable for disposition without oral argument and VACATES the January 14, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion for the following reasons.

## BACKGROUND

**A.     Overview of the Medicare Program**

The Medicare program, as established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., commonly referred to as the Medicare Act, provides health insurance benefits to

individuals over age sixty-five and to certain disabled persons. Congress granted the Secretary of the U.S. Department of Health and Human Services broad authority to issue regulations relating to the administration of Medicare. 42 U.S.C. § 1302(a). CMS is the component of the U.S. Department of Health & Human Services that administers the Medicare program on behalf of the Secretary. 46 Fed. Reg. 56911 (Nov. 19, 1981). The Medicare program consists of several Parts (A-D). This case involves Part B, specifically the regulations governing persons and entities who provide durable medical equipment, prosthetics, orthotics and supplies ("DMEPOS") to Medicare beneficiaries. 42 U.S.C. §§ 1395k(a)(2)(I), 1395m(a).

### B.   Medicare Integrity Program Contractors

As part of the Congressionally-created Medicare Integrity Program, the Secretary enters into contracts with private entities to engage in a variety of activities, including the "[r]eview of activities of providers of services or other individuals and entities furnishing items and services for which payment may be made" under the Medicare Program. 42 U.S.C. § 1395ddd(a)-(b). Accordingly, CMS delegates certain program integrity functions to Medicare contractors, among them Defendants Palmetto GBA and NSC, a division of Palmetto GBA. Mot. at 3. NSC is the contractor which performed the Medicare Integrity Program functions relating to Plaintiff. *Id.*; SAC ¶¶ 23, 26.

### C.   Requirements for DMEPOS Suppliers

In order to receive Medicare payments for items furnished to a Medicare-eligible beneficiary, a DMEPOS supplier such as Plaintiff must have a supplier number issued by the Secretary. 42 U.S.C. § 13965(j)(1)(A). To receive and retain this supplier number and its corresponding billing privileges, a DMEPOS supplier is required to meet and maintain compliance with the thirty "supplier standards" set forth in 42 C.F.R. Subpart D, specifically 42 C.F.R. § 424.57(c). *See* 42 U.S.C. §§ 1395m(j)(1)(B), 1395cc(a). Among these requirements is Supplier Standard 7, which requires a DMEPOS supplier to maintain "a physical facility on an appropriate site." 42 C.F.R. § 424.57(c)(7).[1] Section 424.57(c)(7) further explains that an "appropriate site"

---

[1] References to 42 C.F.R. § 424.57 and § 424.535 are to the provisions in effect in 2013, the time of Plaintiff's revocation. Some portions have since been renumbered or revised, but the substance,

2

must, among other things, be "accessible and staffed during posted hours of operation." *Id.* § (c)(7)(i)(C). Supplier Standard 7's "appropriate site" standard also requires that a supplier maintains "a permanent visible sign in plain view and posts hours of operation." *Id.* § 424.57(c)(7)(i)(D). If a DMEPOS supplier does not meet all of the standards in section 424.57(c), the regulations mandate the revocation of the supplier's billing privileges. *Id.* § 424.57(d) ("CMS will revoke a supplier's billing privileges if it is found not to meet the standards in paragraph[] . . . (c) of this section.").

### D. Administrative Appeals Process

The appeal procedures for actions that affect a supplier's participation in the Medicare system—such as the revocation of billing privileges—are set forth at 42 C.F.R. Part 498. A supplier may first appeal the initial determination by requesting a reconsideration from the designated Medicare contractor within 60 days of receiving notice of the initial determination. 42 C.F.R. § 498.22(b). If dissatisfied with the reconsideration decision, a supplier is then entitled to a hearing before an administrative law judge ("ALJ"). *Id.* § 498.40. A supplier may subsequently appeal the ALJ's decision to the appellate division of the Department of Health & Human Services' Departmental Appeals Board ("DAB"). *Id.* § 498.80. Judicial review of the Secretary's "final decision" is available only after this administrative process is exhausted. 42 U.S.C. § 1395cc(h)(1) (incorporating 42 U.S.C. § 405(g)); *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010). Judicial review of the Secretary's "final decision" on the claim lies in the United States District Court, as provided in 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)(1)(A)).[2]

### E. Requirements for All Participating Medicare Providers and Suppliers

In addition to the specific requirements set forth above, there are also more general

---

particularly of the provisions relevant to this matter, remains the same. Defendants provided the 2013 versions of the two regulations in an Appendix submitted with their Motion. Dkt. No. 21.

[2] 42 U.S.C. § 1395ff(b)(1)(A) states, in part, "any reference to the 'Commissioner of Social Security' or the 'Social Security Administration' in subsection (g) or (l) of section 205 [42 U.S.C. § 405] shall be considered a reference to the 'Secretary' or the 'Department of Health and Human Services', respectively."

3

participation requirements that apply to all Part B suppliers. *See* 42 C.F.R. Subpart P, 42 C.F.R. § 424.535(a). Under Subpart P, if CMS determines, "upon on-site review, that the provider or supplier is no longer operational to furnish Medicare covered items or services, or is not meeting Medicare enrollment requirements under statute or regulation to supervise treatment of, or to provide Medicare covered items or services for, Medicare patients," CMS may revoke the provider or supplier's billing privileges. *Id.* § 424.535(a)(5); *id.* at (a) (permitting revocation for any one of fourteen enumerated bases). Thus, while violation of the Subpart D (§ 424.57(c)) standards for DMEPOS suppliers requires revocation, violation of the generally applicable Subpart P (§ 424.535(a)) standards allows—but does not require—CMS to revoke a provider or supplier's billing privileges.

### F. Plaintiff's Revocation and Administrative Appeals

On August 30, 2013, Plaintiff became enrolled in the Medicare Program and entitled to operate her business as a "by appointment only" supplier of durable medical equipment and supplies, also known as a DMEPOS supplier. SAC ¶ 30. By letter dated October 28, 2013, NSC, on behalf of CMS, notified Plaintiff it was terminating Plaintiff's enrollment in the Medicare program because inspectors had made two attempts to inspect the place of business, but on each occasion, the business had been closed.[3] *See* Admin. Record ("AR") at 111-13.5.[4] The letter cited noncompliance with 42 C.F.R. §§ 424.57(c)(7) (DMEPOS Supplier Standard requiring supplier to "Maintain[] a physical facility on an appropriate site") and 42 C.F.R. §§ 424.535(a)(5)(ii) (revocation based on CMS determination, upon "on-site review," that the supplier is "no longer operational" or "has failed to satisfy any or all of the Medicare enrollment requirements") as bases for the revocation. *Id.* The letter stated that, unless Plaintiff received a favorable decision via the administrative review process, she was barred from re-enrolling in Medicare for two years from

---

[3] A site verification form, submitted as part of the Administrative Record, records the two visits as occurring at 10:30 a.m. and 1:00 p.m., respectively. AR 114. The form also states that on each occasion the "door was locked," the inspector "knocked on the door twice and waited, but there was no answer," and "[l]ights were off as well." *Id.* The form also indicates, "[H]ours not posted." *Id.*

[4] The Administrative Record is filed as Docket Nos. 22-25.

4

the date of revocation. AR 113. The letter also informed Plaintiff of her right to request a reconsideration of the termination decision before a hearing officer. AR 112.

By letter dated November 8, 2013, Plaintiff requested such a reconsideration, AR 110, and on December 24, 2013, the hearing officer upheld the revocation for Plaintiff's noncompliance with Supplier Standard 7, 42 C.F.R. § 424.57(c)(7). AR 105-09. On August 7, 2014, Plaintiff appealed the hearing officer's reconsideration decision to the DAB, Civil Remedies Division, and the case was assigned to an ALJ. AR 18, 32. After briefing by both Plaintiff and CMS, on November 12, 2014, the ALJ issued a decision upholding Plaintiff's revocation for failure to comply with 42 C.F.R. § 424.57(c)(7). AR 1-6. Plaintiff subsequently requested review by the DAB. AR 67-72. On March 3, 2015, the DAB affirmed the ALJ's conclusion that CMS lawfully revoked Plaintiff's billing privileges, but confined its decision to noncompliance with 42 C.F.R. § 424.57(c)(7)(i)(D) (requiring the supplier to post hours of operation). AR 7-17. The DAB found that because 42 C.F.R. § 424.57(c)(7)(i)(D) provided a basis to revoke Plaintiff's billing privileges, it need not determine whether section 424.57(c)(7)(i)(C) also supplied a basis to revoke. AR 12. The DAB decision is the "final decision" of the Secretary, subject to judicial review pursuant to 42 U.S.C. § 405(g).

Plaintiff's two-year ban on re-applying to the Medicare Program expired on November 27, 2015. AR 113; Joint Case Management Statement at 4, Dkt. No. 15.

**G.     Procedural Background**

On May 1, 2015, Plaintiff filed a Complaint in this Court, naming the Department of Health and Human Services, CMS, NSC, and Carolyn Colvin, the Commissioner of Social Security, as Defendants. Dkt. No. 1. Plaintiff sought review of the decision of the DAB pursuant to 42 U.S.C. § 405(g). On August 13, 2015, Plaintiff filed a First Amended Complaint ("FAC"), adding several additional defendants, including Bruce W. Hughes (President of Celerian Group[5]), and Joe Johnson (President of Palmetto GBA). Dkt. No. 8. On October 1, 2015, Plaintiff filed the SAC, which did not specifically re-name Bruce W. Hughes and Joe Johnson as named Defendants.

---

[5] Celerian Group is the marketing name for a group of companies including Palmetto GBA, LLC, which holds the applicable contract with CMS. Mot. at 7.

SAC ¶¶ 3-7.

The SAC alleges three causes of action: (1) a Fifth Amendment Takings Claim (¶¶ 64-67); (2) a Due Process Claim under the Fourteenth Amendment and Article 1 of the California Constitution (¶¶ 68-69); and (3) a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, for gross negligence and failure to provide due care (¶¶ 70-72). Although Plaintiff sought judicial review of the Secretary's final decision upholding Plaintiff's revocation of billing privileges in the initial Complaint (¶¶ 7-25) and the FAC (¶¶ 5-52), Plaintiff removed this claim from the SAC. Plaintiff has recast the SAC as a complaint for damages and now seeks nearly $3 million in alleged compensatory and punitive damages. SAC ¶ 77.

Defendants seek dismissal, arguing Congress has forbidden claims under the FTCA and Constitution as attempts to circumvent the administrative and judicial review procedures that it established for claims which arise under the Medicare Act. Mot. at 2. Thus, Defendants argue Plaintiff cannot allege a valid basis for subject matter jurisdiction, and Plaintiff's SAC must therefore be dismissed under Rule 12(b)(1). *Id.* In the alternative, Defendants argue the Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* at 18.

## LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to

invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In

7

1  addition, courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v.*

2  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

3         If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

       As the Court finds Defendants' jurisdictional arguments persuasive, it turns to Rule 12(b)(1) first.  In the SAC, Plaintiff asserts four possible bases for jurisdiction for her claims: (1) 42 U.S.C. § 405(g); (2) 28 U.S.C. § 1346; (3) 28 U.S.C. § 1331; and (4) 28 U.S.C. § 1332.  SAC ¶¶ 8, 12, 14.  However, as discussed below, Plaintiff's claims arise under the Medicare Act, and 42 U.S.C. § 405(g) is therefore Plaintiff's "sole avenue" into federal court.  42 U.S.C. § 405(h); *Uhm*, 620 F.3d at 1140 (quoting *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984)).

       1.    <u>42 U.S.C. § 405(g)</u>

       As noted above, although the SAC appears to invoke jurisdiction pursuant to 42 U.S.C. § 405(g), (SAC ¶ 8), Plaintiff has abandoned her requests for judicial review under that provision and instead only seeks relief for three causes of action under the Fifth and Fourteenth Amendments of the United States Constitution, and the FTCA.

       42 U.S.C. § 405(g) provides that an affected party such as Plaintiff may obtain judicial review of the Secretary's final decision by commencing a civil action within sixty days after the mailing of the notice of the adverse decision.  However, the review and relief available under § 405(g) is limited: A district court may issue "a judgment affirming, modifying, or reversing the decision" of the Secretary, with or without a remand for a rehearing, but monetary damages are

not available. 42 U.S.C. § 405(g); *see, e.g.*, *Walker v. Colvin*, 2013 WL 5737701, at *2-3 (N.D. Cal. Oct. 21, 2013) ("[T]he waiver of sovereign immunity contained in the Act is a narrow one . . . . The Act . . . specifies that, when reviewing a final decision of the Commissioner, the court may only 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the case for a rehearing.'" (quoting 42 U.S.C. § 405(g))).[6]

Congress explicitly made § 405(g)—to the express exclusion of 28 U.S.C. § 1346 and 28 U.S.C. § 1331—the sole avenue for judicial review of claims arising under the Medicare Act:

> No findings of fact or decision of [the Secretary] after a hearing shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, [the Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). Because the § 405(h) bar to other avenues of review is "sweeping and direct," *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975), all claims that arise under the Medicare Act, even those that are characterized as arising under statutory or constitutional guarantees, must be channeled through the exhaustion and exclusive judicial review provisions of the Medicare statute. *Kaiser v. Blue Cross of Ca.*, 347 F.3d 1107, 1112 (9th Cir. 2003) (explaining that the Supreme Court has held claims that are "inextricably intertwined" with a Medicare benefits determination and claims in which "both the standing and the substantive basis for the presentation of the claims is the Medicare Act" all may "arise under" Medicare and therefore be subject to § 405(h) (internal quotation marks omitted)).

Plaintiff previously sought judicial review under § 405(g). For example, in Plaintiff's FAC, the first allegation was titled, "Administrative Appeal From the Final Decision of the Secretary of the Department of Health and Human Services." FAC ¶¶ 5-38. No such cause of

---

[6] Review pursuant to Section 405(g) is also "highly deferential," *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009), requiring affirmance of the Secretary's decision so long as (1) the record, as a whole, contains substantial evidence to support the Secretary's findings of fact and (2) the Secretary applied the correct legal standard. 42 U.S.C. § 405(g) ("The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

action exists in the SAC.  Moreover, the FAC specifically requested the "Court find the below administrative decision and decision of the Appeals Board were in error . . . ." *Id.* ¶ 52(c).[7]  The SAC, however, dropped this prayer for relief, and instead seeks only monetary damages—relief which cannot be granted via § 405(g) review.  Thus, because Plaintiff has failed to request any relief that falls within the limited waiver of sovereign immunity conferred by § 405(g), the Court must reject Plaintiff's attempt to rely upon § 405(g) as a basis for subject matter jurisdiction for her claims that go beyond the scope of administrative review.  *See, e.g.*, *Walker*, 2013 WL 5737701, at *2-3 (dismissing § 405(g) action for lack of subject matter jurisdiction because plaintiff sought "relief [which] falls outside of the scope of what can be awarded against Defendant"); *see also Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988) ("Once these elaborate administrative remedies have been exhausted, a claimant is entitled to seek judicial review, including review of constitutional claims." (citing 42 U.S.C. § 405(g))).

      2.      <u>Whether Plaintiff's Claims All Arise under the Medicare Act</u>

Defendants argue there is no jurisdictional basis for Plaintiff's remaining claims because they all arise under the Medicare Act.  Mot. at 9.  Specifically, Defendants argue the standing and substantive basis of the claims is the Medicare Act because each of Plaintiff's allegations "arise directly from its disagreement with how NSC performed its inspection duties under the Medicare Integrity Program, including the revocation of Plaintiff's privileges and its complaints regarding the adjudication of her appeal within the extensive administrative appeals system set forth at 42 C.F.R. Part 498."  *Id.* at 13.  Defendants further argue Plaintiff's claims arise under Medicare Act because "they are inextricably intertwined with claims for benefits," in that, to assess these causes of action, the Court "would need to re-decide the Medicare contractor's initial decision to revoke Plaintiff's provider number, and the multiple administrative decisions upholding Plaintiff's revocation."  *Id.* at 14.  Finally, even if Plaintiff's claims are not jurisdictionally barred by §

---

[7] Plaintiff's initial request for relief also referenced 42 U.S.C. § 405(g)'s provision requiring the Secretary to submit "a certified copy of the transcript of the record including the evidence upon which the findings and decisions are based" and allowing the Court to remand the case to the Secretary for reconsideration of the evidence.  FAC ¶ 52.  Plaintiff's SAC removed these prayers for relief, further indicating that Plaintiff does not seek review under § 405(g).

405(h), Defendants contend they must still be dismissed because Plaintiff has not met her burden of alleging a waiver of sovereign immunity that confers subject matter jurisdiction for a claim of monetary damages against the United States. *Id.* at 16.

In response, Plaintiff argues she "complied with the procedures for administrative hearings, diligently trying to be heard—filing a claim with DHHS under 45 C.F.R. § 35.1-10, including 45 C.F.R. § 35.2 which specifies presentation of claims and place of filing." Opp'n at 3, Dkt. No. 31. Plaintiff further argues she satisfied the FTCA waiver requirement when she presented a claim for money damages to the Department of Health and Human Services in her Brief dated November 2, 2014 before the ALJ. *Id.* Plaintiff contends her claims lie outside the bounds of 42 U.S.C. § 405(h) based on the "comp[l]ete failure to provide Plaintiff a fair hearing." *Id.* at 5. Finally, Plaintiff argues she "is legitimately entitled to the property interest conferred to her by the Medicare Act," and her claim is therefore proper under the Fifth Amendment. *Id.* at 8.

42 U.S.C. § 405(h) expressly bars claims "arising" under the Medicare Act, requiring instead that any such claim follow the administrative and judicial review provisions—and limitations—provided in 42 U.S.C. § 405(g). The Ninth Circuit and other courts have repeatedly held that tort, constitutional, and contract claims which sought damages based upon the cessation of Medicare reimbursement, or the return of paid Medicare premiums, arose under the Medicare Act because they were "[c]leverly concealed claims for benefits." *Uhm*, 620 F.3d at 1141-44 (holding plaintiff's breach of contract and unjust enrichment claims were "merely creatively disguised claims for benefits" and thus "arise under" the Medicare Act); *Kaiser*, 347 F.3d at 1111-15 (surveying caselaw in this and other circuits and holding that plaintiff's Administrative Procedure Act and constitutional claims were "inextricably intertwined" with the Medicare carrier's decisions and thus arose under the Medicare Act).

The Supreme Court has construed the phrase "arising under" broadly in this context, applying two tests to determine whether a particular claim arises under the Medicare Act. *Ringer*, 466 U.S. at 614-15; *see also Uhm*, 620 F.3d at 1141; *Kaiser*, 347 F.3d at 1112. First, claims arise under Medicare if "'both the standing and the substantive basis for the presentation of the claims'" is the Medicare Act. *Ringer*, 466 U.S. at 615; *Uhm*, 620 F.3d at 1141; *Kaiser*, 347 F.3d at 1112.

11

1  Second, claims that are "inextricably intertwined" with a Medicare benefits determination may
2  arise under the Medicare Act. *Ringer*, 466 U.S. at 614; *Uhm*, 620 F.3d at 1141; *Kaiser*, 347 F.3d
3  at 1112.
4        Having reviewed the record in this case, the Court finds each of Plaintiff's allegations arise
5  directly from her disagreement with how NSC performed its inspection duties under the Medicare
6  Integrity Program, including the revocation of Plaintiff's privileges and her complaints regarding
7  the adjudication of her appeal within the administrative appeals system set forth at 42 C.F.R. Part
8  498. Plaintiff acknowledges NSC has the "authority to revoke a Supplier[']s privileges when such
9  Supplier is allegedly found out of compliance with Program regulations." SAC ¶ 15. Plaintiff,
10 however, alleges NSC "erroneously reported her hours of operation," which led directly to the
11 revocation of her billing privileges, and also "neglected to timely provide Plaintiff her
12 Acknowledgement of Reconsideration letter" because the letter was "improperly addressed." *Id.*
13 ¶¶ 26, 31-32. According to Plaintiff, this, in turn, led to significant delay in the appeals process
14 and an "unreasonably, long revocation period" that caused financial loss. *Id.* ¶ 39. Plaintiff
15 alleges this "government negligence and misconduct . . . resulted in the forced closure of
16 Plaintiff's business operation," and she requests $900,0000 in compensatory damages and punitive
17 damages of $1.8 million. *Id.* ¶¶ 25, 64-77(a)-(b).
18       Having reviewed these allegations, the Court finds each of Plaintiff's claims seeks to
19 redress the injury—revocation of Plaintiff's billing privileges—she alleges resulted from the
20 Medicare contractor's performance of its statutorily-prescribed duties. Plaintiff's claims are
21 therefore indistinguishable from others in which courts, including the Ninth Circuit, have held that
22 claims for damages resulting from alleged negligence by contractors or government officials are
23 plainly barred by § 405(h) because both the standing and substantive basis for the claims "arise
24 under" the Medicare Act. In *Hooker v. United States Department of Health and Human Services*,
25 the Ninth Circuit disposed of plaintiff's FTCA claim against the United States, explaining that, in
26 a previous decision, the court had "expressly rejected the . . . argument . . . that claims for damages
27 caused by the Secretary's allegedly negligent acts do not 'arise under' the Act." 858 F.2d 525,
28 529 (9th Cir. 1988) (citing *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 592 (9th Cir.

1985) (rejecting plaintiff's FTCA claims for damages based upon the contractor's alleged negligent processing of cost reports because the "substantive cause of action he presses is anticipated by the statute" and "[h]is demand for greater damages than the statute provides would render meaningless the jurisdiction restriction of § 405(h)"). Similarly, the Sixth Circuit rejected an FTCA claim in which a nursing home sought consequential damages resulting from the alleged wrongful termination of Medicare billing privileges. *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 721 (6th Cir. 1991) (describing the "arising under" question in that case as "easily answered"). The *Livingston* court noted the nursing home—like Plaintiff here—was "asserting negligence in the decertification process, a procedure established in the Medicare Act to ensure adequate Medicare services" and thus was clearly barred "[u]nder the plain language of 405(h)." *Id.* at 722 (concluding that the Medicare Act provided "both the standing and substantive basis for the plaintiff's claims" (internal quotation marks omitted)).

Further, Plaintiff's constitutional and tort claims are also "inextricably intertwined" with her administrative claims because, to assess these causes of action, the Court would need to re-decide the Medicare contractor's initial decision to revoke Plaintiff's provider number, as well as the multiple administrative decisions upholding Plaintiff's revocation. In *Kaiser*, the Ninth Circuit concluded that claims which "necessarily mean redeciding" the underlying administrative decisions "arise under Medicare and so are subject to § 405(h)." 347 F.3d at 1115. Like Plaintiff here, the plaintiffs in *Kaiser* sued the Medicare contractor and the federal government on Fifth Amendment and common law claims, contending the contractor's allegedly improper withholding of Medicare payments caused it to close its doors and file for bankruptcy. *Id.* at 1110-11. Also like Plaintiff here, the *Kaiser* plaintiffs sought only monetary damages stemming from the alleged misconduct, as opposed to specific Medicare payments, and argued that this distinction rendered their claims immune from the § 405(h) jurisdictional bar. *Id.* at 1112. The Ninth Circuit disagreed, stating "the type of remedy sought is not strongly probative of whether a claim falls under § 405(h)," *id.* at 1112, and holding that all of the plaintiffs' claims that "arose from the Medicare relationship between [plaintiff] and the government" arose under Medicare and were therefore barred by § 405(h). *Id.* at 1114-15 ("Had the Kaisers been immediately granted a

13

satisfactory ERP [extended repayment plan] . . . or had they never accrued an overpayment in the first place, they never would have brought this case."); *see also id.* at 1112 (surveying "cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements yet have been found to arise under Medicare").

Here, as in *Kaiser*, each of Plaintiff's claims "arose from the Medicare relationship between [Plaintiff] and the government." *Id.* at 1114-15. Plaintiff's constitutional takings claim, for example, mirrors that of the plaintiffs in *Kaiser*, alleging the "extended loss of Medicare billing privileges . . . destroyed Plaintiff's ability to conduct business and her long-planned investment was lost, was thereby taken." SAC ¶ 21. For this alleged loss, Plaintiff seeks an award of "economic and compensatory damages of $900,000 for reasonable loss of the business and its income over a 7-year period, past and future," along with punitive damages of $1.8 million. *Id.* ¶ 77(a)-(b). This is a "cleverly concealed claim[] for benefits," as Plaintiff asks the Court to award her money she contends she would have billed and collected from the Medicare program (and other sources) had her billing privileges not been revoked. *Kaiser*, 347 F.3d at 1112. Moreover, it would be impossible for the Court to determine whether Plaintiff is entitled to such relief without re-deciding the underlying question of whether the revocation was proper.

Similarly, Plaintiff's due process claims appear to be based upon an allegation that the Medicare contractor failed to meet its notification obligations under the Medicare Act's regulations, (SAC ¶¶ 19, 36, 45) (citing to 42 C.F.R. Part 498 and 42 C.F.R. § 405.874)), which resulted in a delay in the administrative appeals process and, ultimately, according to Plaintiff, the loss of her business. *Id.* ¶¶ 39-41, 51-52. Plaintiff even cites to the Medicare Act, 42 U.S.C. § 1395ddd, as the basis of her allegation that she did not receive the process that she was due. *Id.* ¶ 42. Plaintiff's due process claims, which overlap significantly with her tort claims discussed above, are therefore inextricably intertwined with her Medicare relationship with the government and its contractors. Like the plaintiffs in *Kaiser*, had Plaintiff's billing privileges never been revoked, she would not have brought this case. 347 F.3d at 1114-15.

Plaintiff cites *Bell v. Hood*, 327 U.S. 678, 684 (1946), for the proposition that the Court can "use any available remedy to make good the wrong done." Opp'n at 8. As the Ninth Circuit

has noted, however, "[t]he Supreme Court has made it clear that *Bell* is simply one of a 'long line of cases in which the Court has held that if a right of action exists to enforce a federal right *and Congress is silent on the question of remedies*, a federal court may order any appropriate relief." *Spurlock v. FBI*, 69 F.3d 1010, 1017 (9th Cir. 1995) (emphasis in original) (declaring *Bell* inapposite and holding that the district court exceeded its authority when it fashioned a remedy exceeding those provided in the statute at issue (quoting *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 68-69 (1992))).

Accordingly, each of Plaintiff's alleged claims—constitutional takings, due process, and gross negligence/failure to provide due care—"aris[e] under" the Medicare Act and are subject to the jurisdictional bar of § 405(h). As a result, Plaintiff's alleged jurisdictional bases of 28 U.S.C. § 1331, 28 U.S.C. § 1346, and 28 U.S.C. § 1332[8] all fail. SAC ¶¶ 8, 12; *see* 42 U.S.C. § 405(h) (prohibiting jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346 for claims "arising under" the Medicare Act); *Nichole Med. Equip. & Supply*, 694 F.3d at 346-47 (diversity jurisdiction is encompassed by the § 405(h) jurisdictional bar). 42 U.S.C. § 405(g) is therefore the sole avenue for judicial review for Plaintiff's claims. Because Plaintiff has failed to stay within the strict confines of that limited jurisdictional grant, the SAC must be dismissed for lack of subject matter jurisdiction. As such, the Court need not address Defendants' Rule 12(b)(6) arguments.

## CONCLUSION

Because the Medicare Act provides both the standing and substantive basis for each of Plaintiff's stated causes of action, they all "arise[] under" the Act and must be dismissed for lack

---

[8] Section 405(h)'s jurisdictional bar also extends to diversity actions. *See Nichole Med. Equip. & Supply, Inc. v. Tricenturion, Inc.*, 694 F.3d 340, 346-47 (3d Cir. 2012) (discussing the evolution of § 405(h)'s wording and following the Seventh and Eighth Circuits in holding that a plaintiff cannot rely on the court's diversity jurisdiction for claims arising under the Medicare Act because, despite the present wording, "Congress clearly prohibited federal courts from exercising subject matter jurisdiction or diversity jurisdiction over claims arising under the Act"); *Midland Psychiatric Assocs. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) ("We thus hold the jurisdictional bar imposed by sentence three of § 405(h) extends to claims based on diversity of citizenship."); *Bodimetric Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 489 (7th Cir. 1990) (analyzing the technical correction made to the text of § 405(h) by Congress and concluding, "[b]ecause the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions").

of subject matter jurisdiction.  42 U.S.C. § 405(h).  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss.  However, because Plaintiff exhausted her administrative remedies, she acquired a statutorily-provided right to judicial review of the revocation decision, pursuant to 42 U.S.C. § 405(g).  Accordingly, the Court **GRANTS** Plaintiff leave to file a Third Amended Complaint by January 5, 2016.

**IT IS SO ORDERED.**

Dated: December 15, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge