UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JULIE HINDLEY,

    Plaintiff,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

    Defendants.

Case No. 15-cv-01973-MEJ

**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 57, 63

## INTRODUCTION

Pending before the Court are Plaintiff Julie Hindley fdba Sonoma Prosthetic Eyes' ("Plaintiff") Motion for Summary Judgment (Pl.'s Mot., Dkt. No. 57[1]) and Defendants'[2] Cross-Motion for Summary Judgment (Defs.' Mot., Dkt. No. 63). Having considered the parties' positions, the relevant legal authority, and the Administrative Record ("AR") in this case, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motion for the following reasons.

## BACKGROUND

**A. The Medicare Program and DMEPOS Suppliers**

The Medicare Act, 42 U.S.C. § 1395 et seq., creates a federal health insurance program for persons over age sixty-five and certain disabled persons. The Secretary is responsible for the

---

[1] Although Civil Local Rule 7-2(b) requires all motions to be filed in a single document, Plaintiff filed a separate Notice of Motion (Dkt. No. 57) and a Memorandum of Points and Authorities (Dkt. No. 58). For purposes of this Order, the Court's citations to Plaintiff's Motion refer to the Memorandum of Points of Authorities.

[2] Defendants are Sylvia Mathews Burwell, Secretary of the United States Department of Health and Human Services (the "Secretary"); the Center for Medicare and Medicaid Services ("CMS"); National Supplier Clearinghouse ("NSC"); Bruce W. Hughes, President of Celerian Group; and Joe Johnson, President of Palmetto GBA.

administration of Medicare and has broad authority to "make and publish such rules and regulations . . . as may be necessary to the efficient administration" of the Medicare program. 42 U.S.C. § 1302(a). The Secretary administers Medicare through CMS, an agency within the U.S. Department of Health and Human Services. 46 Fed. Reg. 56911 (Nov. 19, 1981); *Fox Ins. Co. v. Ctrs. for Medicare & Medicaid Servs.*, 715 F.3d 1211, 1214 (9th Cir. 2013). CMS contracts with NSC, a division of Palmetto GBA. Defs.' Statement of Facts ("Defs.' SOF") ¶ 60.

Part B of the Medicare Act establishes "a voluntary insurance program to provide medical insurance benefits . . . for aged and disabled individuals who elect to enroll under such program, to be financed from premium payments by enrollees together with contributions from funds appropriated by the Federal Government." 42 U.S.C. § 1395j. As is relevant here, Part B provides reimbursement for Medicare-covered durable medical equipment, prosthetics, orthotics, and supplies ("DMEPOS"). 42 U.S.C. §§ 1395k(a)(2)(I), 1395m. To receive Medicare reimbursement, a DMEPOS supplier must receive a supplier number issued by the Secretary. 42 U.S.C. § 1395m(j)(1). "A [DMEPOS] supplier may not obtain a supplier number unless . . . the supplier meets revised standards prescribed by the Secretary[.]" 42 U.S.C. § 1395m(j)(1)(B). The DMEPOS supplier standards are set forth in 42 C.F.R. § 424.57(c).[3] NSC subcontracts with Overland Solutions, Inc. ("Overland Solutions") to perform on-site inspections of DMEPOS suppliers to ensure compliance with these requirements. Defs.' SOF ¶ 108.

**B.   Revocation of Plaintiff's DMEPOS Supplier Number**

Plaintiff is the former sole proprietor of Sonoma Prosthetic Eyes ("Sonoma"). Fifth Am. Compl. ("FAC"), Dkt. No. 51. On August 30, 2013, NSC approved Plaintiff as a DMEPOS supplier. AR 116; *see* AR 111. Plaintiff's Medicare supplier enrollment application lists Sonoma Prosthetic Eyes' business hours as "9-5 M-Sat./By appointment only." AR 119.

At 10:30 a.m. on October 1 and at 1:00 p.m. October 4, 2013, an Overland Solutions inspector attempted to conduct onsite visits of Sonoma Prosthetic Eyes. Defs.' SOF ¶¶ 109-10; AR 114 (Site Verification Survey Form). On both attempts, the inspector went to the door, noted

---

[3] References to 42 C.F.R. § 424.57 and § 424.535 are to the provisions in effect in 2013, the time of Plaintiff's revocation.

2

it was locked, and knocked twice; however, no one answered and the inspector noted the lights were off. AR 114. The inspector took six photographs of the building's exterior, including its entrance and signage. AR 115. The inspector noted that the business hours were not posted. AR 114.

On October 28, 2013, NSC, on behalf of CMS, notified Plaintiff by letter that it was revoking her DMEPOS supplier number. AR 101-03; *see also* Defs.' SOF ¶ 1. The letter noted Plaintiff was not in compliance with the supplier standards set forth in 42 C.F.R. § 424.57(c)(7) and was considered to be in violation of 42 C.F.R. §§ 424.535(a)(5)(ii) and 424.57(c). AR 101-02. This conclusion was based solely on the unsuccessful October 1 and 4, 2013 site visits. *Id.* As a result, Plaintiff was barred from re-enrolling in the Medicare program for two years. AR 101. The letter further stated Plaintiff could make a written request for a reconsideration hearing before a hearing officer ("HO") within 60 days. AR 102.

**C.     Proceedings before the Medicare Hearing Officer**

On November 8 and 29 and December 23, 2013, Plaintiff made written requests for a reconsideration hearing. AR 94-95, 110; *see* Defs.' SOF ¶ 4. In a letter dated November 29, 2013, Medicare HO Colleen Jais acknowledged receipt of Plaintiff's request for reconsideration and stated she would make "a new and independent decision based on the evidence in the case file and on any additional evidence that [Plaintiff] would like to submit." AR 104. HO Jais provided instructions on how Plaintiff could submit additional documentation. *See id.* HO Jais reached an unfavorable decision on December 24, 2013. AR 105-09. Specifically, HO Jais found that "Sonoma Prosthetic Eyes ha[d] not shown compliance with supplier standard 7"[4] and "ha[d] not provided evidence to show they have complied with the standard for which they were non-compliant." AR 108. As such, HO Jais concluded Plaintiff "cannot be granted access to the Medicare Trust Fund by way of a Medicare supplier number." AR 108. HO Jais informed Plaintiff that Plaintiff could appeal the decision before an administrative law judge ("ALJ") of the Department of Health and Human Services Departmental Appeals Board. *Id.* 108-09.

---

[4] "Supplier standard 7" refers to 42 C.F.R. § 424.57(c)(7). *See* AR 106.

3

**D. ALJ Proceedings**

On August 7, 2014, Plaintiff timely requested a review by an ALJ. AR 18. On August 25, 2014, ALJ Steven T. Kessel issued an Acknowledgment and Pre-Hearing Order ("Pre-Hearing Order"). AR 33-38. The Pre-Hearing Order required the parties to submit pre-hearing briefs addressing the issues of law and fact. AR 35. It further provided that Plaintiff and CMS could offer and cross-examine witnesses, written direct testimony, and exhibits. AR 35-38. Both Plaintiff and CMS filed briefs and each submitted six exhibits. AR 43-49 (CMS' brief), 55-64 (Pl.'s brief), 91-104 (Pl.'s exhibits), 105-31 (CMS' exhibits). CMS submitted with its brief the Site Verification Survey Form and six black and white reproductions of photographs taken of Sonoma Prosthetic Eyes. AR 114-15. Plaintiff submitted six documents, and no photographs. AR 91-104; *see* AR 54.

On November 12, 2014, the ALJ upheld CMS' revocation of Plaintiff's Medicare enrollment. *See* AR 1-6. As neither Plaintiff nor CMS identified any witnesses or offered written direct testimony, the ALJ elected not to conduct an in-person hearing. AR 2. The ALJ concluded the "facts plainly establish[ed] grounds for revoking Petitioner's enrollment for noncompliance with the requirements of 42 C.F.R. § 424.57(c)(7)." *Id.* The ALJ found "[Plaintiff] was obligated to post its hours of operation and . . . to be accessible during whatever hours it posted. It failed in both respects based on the facts offered by CMS." *Id.* The ALJ also found that the effective date of revocation was November 12, 2013, fifteen days after Petitioner was sent notice of the revocation. AR 6.

**E. Proceedings before the Appellate Division of the Departmental Appeals Board**

On November 27, 2014, Plaintiff requested the Appellate Division of the Departmental Appeals Board ("DAB") review the ALJ's decision. AR 67-71. CMS opposed Plaintiff's request on December 22, 2014. AR 76-82. On December 30, 2014, Plaintiff filed a reply. AR 83-88.

The DAB issued its decision on March 3, 2015. AR 7-17. It affirmed "the ALJ's conclusion that CMS lawfully revoked Sonoma's billing privileges." AR 7. The DAB held "that the record established that Sonoma did not have its hours of operation posted when the NSC inspector attempted to visit on October 1 and 4, 2013 and, therefore, that CMS was authorized to

revoke Sonoma's DMEPOS supplier billing privileges based on its noncompliance with section 424.57(c)(7)(i)(D)." AR 10. However, the DAB reversed the ALJ's finding that the effective date of the revocation was November 12, 2013. AR 15. The DAB instead determined that the effective date of revocation was November 27, 2013, thirty days after the date of notice of revocation. *Id.*

**F.   The Instant Proceedings**

Plaintiff initiated this action on May 1, 2015. *See* Compl., Dkt. No. 1. She filed her First Amended Complaint on August 13, 2015, and her Second Amended Complaint ("SAC") on October 1, 2015. *See* First Am. Compl., Dkt. No. 8; SAC, Dkt. No. 18. On December 15, 2015, the Court dismissed the SAC for lack of subject matter jurisdiction. SAC Order, Dkt. No. 35. Although Plaintiff asserted jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. §§ 1331, 1332, and 1346 (SAC ¶¶ 8, 12, 14), the Court found Plaintiff's claims arise under the Medicare Act (SAC Order at 10-15). As such, the Court held that "42 U.S.C. § 405(g) is . . . [her] sole avenue for judicial review[,]" and that § 405(g) does not permit monetary damages. *Id.* at 8-9, 15. Plaintiff sought only monetary damages; she did not seek review of the Secretary's decision. *See* SAC; SAC Order at 6 (noting "Plaintiff has recast the SAC as a complaint for damages"). As "Plaintiff ha[d] failed to request any relief that falls within the limited waiver of sovereign immunity conferred by § 405(g), the Court reject[ed] Plaintiff's attempt to rely upon § 405(g) as a basis for subject matter jurisdiction for her claims that go beyond the scope of administrative review." SAC Order at 10. The Court accordingly dismissed the SAC for lack of subject matter jurisdiction. *Id.* at 15.

On January 5, 2016, Plaintiff filed her Third Amended Complaint ("TAC"). Dkt. No. 36. In her TAC, Plaintiff did not assert jurisdiction under 42 U.S.C. § 405(g), but rather invoked 28 U.S.C. § 1331 for the same due process claims which she previously alleged in the SAC. *See* TAC at 7. The Court dismissed the TAC, noting that "28 U.S.C. § 1331[ ]was explicitly rejected [as a basis for jurisdiction] in the Court's prior order dismissing Plaintiff's SAC[.]" TAC Order at 4, Dkt. No. 42; *see id.* at 5 ("[T]he Court previously ruled § 1331 cannot confer subject matter jurisdiction over [Plaintiff's] claims.").

On March 3, 3016, Plaintiff filed her Fourth Amended Complaint (Dkt. No. 43), which she subsequently sought to amend (Dkt. No. 46). The Court permitted the amendment (Dkt. No. 50), and, on April 15, 2016, Plaintiff filed the operative Fifth Amended Complaint (FAC, Dkt. No. 51). Plaintiff brings the FAC pursuant to 42 U.S.C. § 405(g) and—despite the Court's previous Orders—28 U.S.C. § 1331. FAC ¶¶ 2-7. The FAC appears to assert a Fifth Amendment procedural due process violation and a request for judicial review of the DAB's decision. *See id.* at 2 (section heading "STATEMENT OF FACTS AND CLAIM") & ¶¶ 17-109. Plaintiff also—again, despite the Court's prior rulings—requests $900,000 in economic and compensatory damages and $1.6 million in punitive damages. *Id.* at 19-20.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Secretary pursuant to 42 U.S.C. §§ 1395cc(h)(1)(A) and 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

**A.  Preliminary Issues**

Before turning to the parties' arguments regarding summary judgment, the Court addresses two issues regarding jurisdiction over (1) CMS, Hughes, Johnson, and NSC; and (2) Plaintiff's damages. Although the Court addressed some of the foregoing issues in prior Orders, Plaintiff's repeated failures to obey the Court's rulings makes it necessary to revisit them yet again.

      1.      <u>CMS, Hughes, Johnson, and NSC</u>

"The Medicare Act gives federal district courts original jurisdiction over appeals from most determinations by the Secretary of Health and Human Services." *Plott Nursing Home v. Burwell*, 779 F.3d 975, 990 n.1 (9th Cir. 2015) (citing 42 U.S.C. § 1395cc(h)(1)(A)). "[A]n institution or agency dissatisfied with a determination by the Secretary that it is not a provider of services or with a determination described in subsection (b)(2) of this section shall be entitled . . . to judicial review of the Secretary's final decision after such hearing as is provided in [42 U.S.C. §] 405(g)[.]" 42 U.S.C. § 1395cc(h)(1)(A).

In relevant part, 42 U.S.C. § 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business[.]

*See* 42 U.S.C. § 1395cc(h)(1)(A) ("[A]ny reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively."). "[J]udicial review under . . . 42 U.S.C. § 405(g)[] [is] the sole avenue for judicial review for claims arising under the Medicare Act." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140 (9th Cir. 2010) (internal quotation marks omitted); *see* 42 U.S.C. § 405(h) ("No action against . . . the [Secretary] . . . shall be

7

brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.").

Defendants argue the Court should dismiss CMS, Hughes, Johnson, and NSC for lack of jurisdiction because the Secretary is the only proper defendant under § 405(g).[5] Defs.' Mot. at 21. Plaintiff does not address this argument in her Reply.

The Court has repeatedly held that Plaintiff cannot assert jurisdiction under 28 U.S.C. § 1331. *See* SAC Order at 8-15; TAC Order at 4, 7. In blatant disregard to the Court's prior Orders, Plaintiff continues to assert jurisdiction "under either [§] 405(g) . . . or 28 U.S.C. § 1331[.]" FAC ¶ 7. Given Plaintiff's failure to adhere to the Court's Orders, the Court STRIKES Plaintiff's assertion of jurisdiction under 42 U.S.C. § 1331.

Jurisdiction lies exclusively under 42 U.S.C. § 405(g), and the Secretary is the only proper Defendant in this action. *See Ro Ane v. Mathews*, 476 F. Supp. 1089, 1093 (N.D. Cal. 1977), *aff'd sub nom. Roane v. Harris*, 604 F.2d 37 (9th Cir. 1979) (dismissing all defendants except the Secretary of Social Security for lack of jurisdiction and noting "Section [4]05(g)'s consent to suit against the Secretary constitutes a limited waiver of sovereign immunity and must be strictly construed."); *Keesing v. Apfel*, 124 F. Supp. 2d 134, 135 (N.D.N.Y. 2000) ("The only proper defendant in an action under section 405(g) is the Commissioner of Social Security."). Accordingly, the Court DISMISSES CMS, Hughes, Johnson, and NSC from this action. Because it lacks jurisdiction over these Defendants, the Court dismisses them WITH PREJUDICE.

2. <u>Damages</u>

By seeking $2.7 million in compensatory and punitive damages (FAC at 20), Plaintiff once again fails to comply with the Court's SAC Order. The Court previously held that "[a] district court may issue 'a judgment affirming, modifying, or reversing the decision' of the Secretary, with or without a remand for a rehearing, *but monetary damages are not available*." SAC Order at 8-9

---

[5] Defendants did not raise this argument prior to this Motion. However, "[t]he objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

8

(emphasis added) (quoting 42 U.S.C. § 405(g); citing *Walker v. Colvin*, 2013 WL 5737701, at *2-3 (N.D. Cal. Oct. 21, 2013)). As Plaintiff's attempt to seek monetary damages contravenes the Court's Order, the Court STRIKES Plaintiff's request for damages.

**B.  The DAB's Decision**

    1.  New Evidence

Before the Court reviews the DAB's decision, it addresses Plaintiff's argument that evidence outside of the Administrative Record shows Plaintiff posted her hours of operation. Pl.'s Mot. at 6 (quoting 42 U.S.C. § 405(g)); *see* FAC ¶ 86 & Exs. 1-4 (photographs of Plaintiff's front main entrance taken on or about March 25, 2016). Plaintiff interchangeably argues the Court and the Secretary may consider new evidence. *Compare* Mot. at 6 *with* Reply at 9-10.

In her Motion, Plaintiff suggests the Court may consider this new evidence. *See* Pl.'s Mot. at 6 ("'The Court may . . . at any time order additional evidence to be taken . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .'." (quoting 42 U.S.C. § 405(g); ellipses in original)). Plaintiff misrepresents the scope of § 405(g), as this provision does not permit the Court to consider new evidence. The statute provides that

> the court may . . . at any time order additional evidence *to be taken before the [Secretary]*, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

*Id.* (emphasis added). In other words, while the Court may order the Secretary to consider new evidence on remand, the Court itself cannot consider evidence outside of the Administrative Record. *Banzet v. Colvin*, 2016 WL 4540821, at *4 (E.D. Cal. Aug. 30, 2016) ("District courts lack jurisdiction to reverse the Commissioner's decision based on evidence that is not part of the administrative record. *See* 42 U.S.C. § 405(g) []. Thus, the additional evidence plaintiff submits cannot be considered for the first time in this court in determining the propriety of the ALJ's decision."). As such, the Court cannot consider Plaintiff's new evidence.

Plaintiff takes a different approach in her Reply, in which she contends the Secretary may consider new evidence. Reply at 9-10 (citing 42 U.S.C. § 405(g)). Assuming arguendo that the

Court remands the case, it declines to order that Plaintiff's photographs be presented to the Secretary.

First, Plaintiff's photographs are not material. "New evidence is material when it bears directly and substantially on the matter in dispute, and if there is a reasonable possibility that the new evidence would have changed the outcome of the determination." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010) (internal quotation marks and edits omitted). Plaintiff contends Exhibits 1 through 4, when viewed "along with Defendants [sic] photographs, . . . show[] Plaintiff's signage exceeded Program regulations." Pl.'s Mot. at 7; *see* FAC ¶ 86-87 ("This evidence clearly showing the front main entrance and clearly showing a separate pathway leading to a side door [sic]"; "Plaintiff's hours were listed at this front main entrance to the building, thus in complete, full compliance with 424.57(c)(7)(i)(D) —and therefore in 100% compliance with all regulations."). The photographs appear to show signs posted on a door; these signs, however, are illegible. *See* Ex. 2. The photographs therefore do not bear directly and substantially on any relevant dispute, as they do not show posted hours of operation. Moreover, these photographs were taken in March 2016—more than three years after CMS revoked Plaintiff's DMEPOS supplier number. Plaintiff offers no evidence these photographs are an accurate representation of the building in 2013.

Second, Plaintiff has not shown good cause for her failure to introduce the photographs in any of the prior proceedings. "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001). Plaintiff does not demonstrate why she was unable to photograph the building during the administrative proceedings or to introduce the photographs during those proceedings. Even if Plaintiff could not offer new evidence before the DAB (Pl.'s Mot. at 7), she does not explain why she did not submit these photos to the HO or the ALJ. The HO and the ALJ permitted Plaintiff to submit exhibits. *See* AR 36, 104. While Plaintiff submitted documentation to the ALJ, she did not include any photographs. *See* AR 54, 91-104. The record shows Plaintiff did not submit photographs to the HO. Because Plaintiff had multiple opportunities to submit this evidence at various stages of the administrative proceedings, Plaintiff fails to meet the good cause requirement

10

1 for not having offered the photographs prior to this point.

2. The DAB's Findings

The Administrative Record supports the DAB's finding that Plaintiff did not comply with 42 C.F.R. § 424.57(c)(7)(i)(D). As an initial matter, Plaintiff did not contest the ALJ's finding of noncompliance to the DAB. AR 12 ("Sonoma does not dispute the ALJ's finding that it did not have a visible sign posting its hours of operation."). Plaintiff nonetheless raises the argument now.

In affirming the ALJ's decision, the DAB relied on the Site Verification Survey Form. AR 8-9; *see* AR 114. The Site Verification Survey Form states that while the facility has a sign that indicates the business name, it did not have hours posted. AR 114. The DAB also relied on six photographs of Plaintiff's facility that show the building's front door bearing Plaintiff's business name, occupation, and telephone number, but no hours of operation. AR 9 n.4; *see* AR 115.

The Administrative Record does not contain evidence contradicting Defendants' description of the photographs as Plaintiff's front main entrance, and Plaintiff did not object to these photographs in any of the administrative proceedings. *See* AR 9 n.4 (DAB noting "Sonoma did not raise any objection concerning the photographs, which the reconsidered decision . . . and CMS's Pre-Hearing Brief and Motion for Summary Judgment . . . stated were evidence of the failure to have hours of operation posted on the attempted inspection dates."). But Plaintiff now argues "Defendants did not submit photographic evidence of the buildings [sic] front main entrance" and "Plaintiff stated her hours were posted there." Pl.'s Mot. at 8-9 (citing FAC ¶ 87). Courts have generally held that "claimants must raise issues at their administrative hearings to preserve them for appeal in federal court." *Leveque v. Colvin*, 2016 WL 4719276, at *7 (N.D. Cal. Sept. 9, 2016) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999)). To the extent Plaintiff did not waive this issue by failing to raise it before the DAB or the ALJ, Plaintiff's bare allegation, without more, is insufficient to show compliance with 42 C.F.R. § 424.57(c)(7)(i)(D). The Administrative Record does not contain evidence that Plaintiff had signage listing her hours of operation elsewhere on the building.

Plaintiff also contests the use of the Site Verification Survey Form as evidence. She

11

contends that "on the site visit report, 'Y' for Yes was marked by the inspector in response to question # 4 relating to signage. Question # 4 also asks the inspector to note if the hours are not posted. The inspector did NOT note that hours were not posted."[6] Pl.'s Mot. at 8 (citing AR at 114; capitalization in original). On the contrary, the Site Verification Survey Form clearly states Plaintiff's hours were not posted:

> 5. ☒Y ☐N  Does the facility have a sign that indicates the business name? (Applicable for DMEPOS Suppliers Only) If posted, note the facilities hours of operation? **Hours not posted**

AR 114 (emphasis added).

In sum, substantial evidence supports the DAB's finding that Plaintiff did not post her hours of operation in accordance with 42 C.F.R. § 424.57(c)(7)(i)(D). There is no evidence in the record that suggests otherwise. Plaintiff's remaining arguments as to why revocation was improper are unavailing.

In the alternative, Plaintiff argues the failure to post hours of operations is "harmless," and cites 42 U.S.C. § 1395cc, 42 U.S.C. § 1320c-5(b)(1)(A), and 42 C.F.R. § 488.28(b) in support. Pl.'s Mot. at 9. Plaintiff appears to contend revocation of her DMEPOS billing number was improper because she substantially complied with DMEPOS requirements, but she does not explain why these statutes support her argument.[7] In fact, the statutes she cites do not apply to DMEPOS providers. *See* 42 U.S.C. § 1395cc (titled "Agreements with providers of services"); 42 U.S.C. § 1320c-5 (purpose of 42 U.S.C. § 1320c is to establish contracting process with quality improvement organizations (*see* 42 U.S.C. § 1320(c)); 42 C.F.R. § 488.28 (for purposes of this

---

[6] Although Plaintiff states "Question #4," she appears to reference Question No. 5 on the Site Verification Survey Form. *See* AR 114 (Box checked "N" for Question No. 4 which asks "Does there appear to be signs of customer activity present during the survey?"; box checked "Y" for Question No. 5 which asks "Does the facility have a sign that indicates the business name?").

[7] Plaintiff instead makes a policy argument. Mot. at 10 ("To hold otherwise begs the question of what charge would not cause complete termination of any supplier or provider Agreement. Health care professionals would flee towards alternate professions, fearing at any moment their dreams, hard earned degrees and certifications (half a decade necessary for Plaintiff to qualify for Medicare Program standards) could go down the drain in an instant. Realizing the government could effectively strip them of their livelihoods, at any moment, for a harmless piece of signage, with no opportunity to even correct it. [sic] One would also have to wonder what the entire Medicare Integrity Program and Corrective Action (CAP) were implemented for if it did not include opportunity to correct a piece of signage. It is absurd.").

section, "provider refers to a hospital, critical access hospital, skilled nursing facility, nursing facility, home health agency, hospice, comprehensive outpatient rehabilitation facility, or a clinic, rehabilitation agency or public health agency that furnishes outpatient physical therapy or speech pathology services"; "supplier means any of the following: Independent laboratory; portable X–ray services; physical therapist in independent practice; ESRD facility; rural health clinic; Federally qualified health center; chiropractor; or ambulatory surgical center." (42 C.F.R. § 488.1)). Plaintiff does not explain how statutes that are inapplicable to DMEPOS providers demonstrate Plaintiff's failure to meet the statutory requirements that do apply to DMEPOS providers could be harmless. To the extent Plaintiff makes that argument, the Court finds it lacks merit.

In contrast, 42 C.F.R. § 424.57 pertains specifically to DMEPOS providers, and the DAB properly relied on this regulation to find Plaintiff was not compliant. Section 424.57 does not set a "substantial compliance" standard; rather, it provides that "CMS will revoke a supplier's billing privileges if it is found not to meet the standards in paragraph[] . . . (c) of this section." 42 C.F.R. § 424.57(d). The record contains substantial evidence that Plaintiff did not comply with 42 C.F.R. § 424.57(c)(7)(i)(D), and thus the DAB did not err in affirming the ALJ's decision to revoke Plaintiff's DMEPOS billing number.

### C. Procedural Due Process

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Wilson v. Lynch*, 835 F.3d 1083, 1098 (9th Cir. 2016), *cert. denied sub nom. Wilson v. Sessions*, 2017 WL 1114979 (Mar. 27, 2017) (internal quotation marks omitted).

"'A threshold requirement to . . . procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution.'" *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994)). In other words, Plaintiff must first establish a property or liberty interest that triggers due process protection. *Kaiser Found. Health Plan, Inc. v. Burwell*, 147 F. Supp. 3d 897, 912 (N.D. Cal. 2015). But Plaintiff makes no attempt to do so. *See* Pl.'s Mot.; Reply. She instead

13

focuses only on the second element of a procedural due process claim, arguing she was "plainly and clearly denied 'reasonable notice and opportunity for hearing' as a result of Defendants [sic] failure to act with due care." Pl.'s Mot. at 11; *see* Reply at 3-6. Indeed, Plaintiff cannot allege either a property or a liberty interest.

### 1. Property Interest

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotation marks omitted). A claim of entitlement is not created by the Constitution, but rather "'by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir. 2010) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "A legitimate claim of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1030 (9th Cir. 2010) (internal quotation marks omitted).

Plaintiff does not hold a property interest in a DMEPOS supplier number or other Medicare privileges. The Ninth Circuit has consistently held there is no "property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs." *Erickson v. U.S. ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 862 (9th Cir. 1995); *see Fox Ins. Co.*, 715 F.3d at 1223 (9th Cir. 2013) (citing *id.*); *Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009) (same). Indeed, "[p]articipation in the Medicare program is a voluntary undertaking." *Kaiser Found. Health Plan*, 147 F. Supp. 3d at 912 (citing *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 720 (6th Cir. 1991)); 42 U.S.C. § 1395j (establishing Part B, a "voluntary insurance program"). There is no evidence the Secretary was required to provide Plaintiff with a DMEPOS supplier billing number. In light of this, coupled with the voluntary nature of the DMEPOS program, Plaintiff cannot claim an entitlement to participate in the

14

1 Medicare program as a DMEPOS supplier. Accordingly, she does not have a property interest.[8]

2     2. <u>Liberty Interest</u>

3 Plaintiff also fails to identify, much less establish, a constitutionally-protected liberty interest.[9] To the extent Plaintiff asserts the revocation of her DMEPOS supplier number amounts to a denial of her liberty interest in pursuing her chosen occupation, it does not. "The Supreme Court has not specified the boundaries of the right to pursue a profession, but has identified it generally." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007), *aff'd sub nom. Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) (citing *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999)). The Ninth Circuit recognizes "a *substantive* due process claim if [a plaintiff] is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Id.* (emphasis added). There is no evidence the Secretary's decision was arbitrary and left Plaintiff unable to pursue her chosen occupation. First, as explained above, there is substantial evidence supporting the decision to revoke Plaintiff's DMEPOS supplier number; as such, the decision cannot be characterized as "arbitrary and lacking a rational basis." Second, the revocation did not completely exclude Plaintiff from the medical profession, or even the prosthetic eye business. *See Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (noting the Supreme Court "indicated that 'a complete prohibition of the right to engage in a calling' might implicate due process, but that 'the sort of brief interruption which occurred'. . . did not." (quoting *Conn*, 526 U.S. at 292)). The Secretary's decision simply prevented Plaintiff from participating in the

---

[8] In her FAC, Plaintiff alleges she "holds a property interest in the implied-in-fact contract which is constituted in the Medicare agreement." FAC ¶ 22. Plaintiff does not argue this in her Motion. *See* Mot.

[9] In her FAC, Plaintiff alleges

> Defendants obstructed a rare business opportunity. In March of 2015 Plaintiff had a rare offer to purchase another Ocularist practice. Without a billing . . . number and with her professional standing discredited[,] Plaintiff was unqualified to proceed. [] No other such opportunity is on the horizon. For all practical purposes such future opportunity is virtually nonexistent.

FAC ¶ 56. Plaintiff further alleges her "liberty interest has been unmistakably affected, and remains in further detriment" (*id.* ¶ 57); however, she does not address this interest in her Motion.

15

Medicare program—and only temporarily. *See* AR 111, 113 (Plaintiff barred from re-enrolling in Medicare program for two years); 42 C.F.R. § 424.535(c)(1) ("If a . . . supplier . . . has their billing privileges revoked, they are barred from participating in the Medicare program from the date of the revocation until the end of the re-enrollment bar.[] The re-enrollment bar begins 30 days after CMS or its contractor mails notice of the revocation and lasts a minimum of 1 year, but not greater than 3 years, depending on the severity of the basis for revocation."); SAC Order at 5 (noting "Plaintiff's two-year ban on re-applying to the Medicare Program expired on November 27, 2015.").

To the extent Plaintiff alleges the revocation of her DMEPOS supplier number harmed her professional reputation, Plaintiff points to no evidence beyond her bare allegations that the loss caused her reputational harm. *See* FAC ¶ 54 ("Patient relationships irreparably lost. Standing in her professions Organization tarnished. Relationships between ancillary medical professionals and colleagues compromised." (errors in original)); *id.* ¶ 57 ("Without a billing . . . number and with her professional standing discredited[,] Plaintiff was unqualified to proceed."). Although the Ninth Circuit has held a Medicare provider does not have a property right in the continued participation in the Medicare program, "[a] person's liberty interest is implicated if a charge impairs his reputation for honesty or morality." *Erickson*, 67 F.3d at 862. "The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by law." *Id.* (internal quotation marks and brackets omitted). But without evidence of reputational harm, a reasonable finder of fact cannot find Plaintiff suffered a deprivation of this liberty interest.

### 3. Summary

Because Plaintiff does not have a property interest and fails to demonstrate the existence of a liberty interest, the Court need not consider whether the revocation of Plaintiff's supplier number violated due process.

//

//

**CONCLUSION**

Based on the analysis above, the Court ORDERS the following:

1. CMS, Hughes, Johnson, and NSC are DISMISSED from this action WITH PREJUDICE, as the Court lacks subject matter jurisdiction to decide Plaintiff's claims against these Defendants.
2. Plaintiff's Motion for Summary Judgment is DENIED, and the Secretary's Cross-Motion for Summary Judgment is GRANTED.

The Court will issue a separate judgment in accordance with Federal Rules of Civil Procedure 54 and 58.

**IT IS SO ORDERED.**

Dated: April 19, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge